UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                     CRIMINAL

VERSUS                                                       NO. 19-87

DALE PHILLIPS JR.                                     SECTION "H" (2)

### REPORT AND RECOMMENDATION

Defendant Dale Phillips, Jr., filed a Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255 which was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B).[1]  I issue this Report and Recommendation to address Defendant's remaining § 2255 claims and the Government's opposition (ECF No. 422) thereto.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

A.     **Proceedings Leading to Phillips' Guilty Plea and Sentencing**

Defendant Phillips was charged in two counts of a five count indictment: Count 1, conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and 280 grams or more of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), all in violation of § 846; and Count 4, possession with intent to distribute cocaine and cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).[2]  Defendant pled guilty to Count 4 of the Indictment on August 12, 2020.[3]  He signed a written plea agreement in which he waived his

---

[1] ECF Nos. 368, 377.
[2] ECF No. 1 at 1-2.
[3] ECF No. 113.

right to appeal his conviction and his right to collateral review under § 2255.[4]  The Factual Basis for the plea, signed by Defendant as part of the plea agreement, reflected evidence that Defendant assisted his co-defendant in his drug distribution operation and traveled with his co-defendant to purchase drugs from a supplier, which drugs were in the vehicle when both were arrested after a traffic stop.[5]  The plea agreement was not read into the record at Defendant's re-arraignment, although it was summarized at that time, and both Defendant and his counsel confirmed their signatures on the signed plea agreement presented to the court.[6]

In the plea agreement, Defendant acknowledged that he faced a maximum sentence of 20 years of imprisonment, a fine of up to $1 million, and a 3-year supervised release term.[7]  He also acknowledged that the court could impose the maximum term of imprisonment and fine allowed by law, including the imposition of supervised release, and that the court had the authority and discretion, in determining a fair and just sentence, to consider any and all "relevant conduct" that the defendant was involved in, the nature and circumstances of the offenses, and the history and characteristics of the defendant.[8]  Defendant also acknowledged his right to appeal his conviction, sentence, restitution, fine, and judgment as well as to file collateral challenges to his conviction and sentence, and he specifically waived any right to appeal or contest his guilty plea, conviction, sentence, fine, supervised release, and any restitution imposed by any judge under any applicable restitution statute.[9]  Defendant expressly reserved, however, the right to bring a direct appeal of

---

[4] ECF No. 115 at 2-3.
[5] ECF No. 114, at 3.
[6] ECF No. 411 at 10-12.
[7] ECF No. 115 at 1-2.
[8] *Id*. at 2.
[9] ECF No. 115 at 2-3.

any sentence imposed in excess of the statutory maximum as well as the right to raise a claim of ineffective assistance of counsel.[10]

As part of the plea agreement, the Government agreed to dismiss Count 1 of the indictment at sentencing.[11]   Count 1 of the indictment carried a statutory minimum penalty of 10 years to statutory maximum of life.[12]   With a career offender enhancement, the guideline range for the dismissed Count 1 would have been 262 – 237 months.[13]

Following Defendant's re-arraignment, a draft PSR was filed on September 22, 2020 (ECF No. 120), with the final PSR filed on January 27, 2021.[14]   Defendant filed two objections to the PSR:   (1) an objection to the PSR's finding that he was a career offender because one of his two prior convictions was for attempted distribution; and (2) an objection based on his minor participant status.[15]   The court overruled the career offender objection in keeping with the holdings of the United States Fifth Circuit Court of Appeals.[16]   Although the court agreed that Defendant was not the ringleader, it found that he was not a minor participant given his role in converting powder cocaine to crack cocaine, purchasing powder cocaine from a co-defendant, discussing those matters with a co-defendant, and arranging for other individuals to purchase cocaine.[17]

At the sentencing hearing held on June 30, 2021, after noting the guideline range for Count 4 to be 151-188 months imprisonment and fine of between $30,000-$1,000,000, the court

---

[10] *Id*. at 3.

[11] ECF No. 115 at 1.

[12] ECF No. 397 at 1.

[13] *Id*. at 2.

[14] ECF No. 153.

[15] ECF No. 137 (restricted access); ECF No. 384 at 3, 4-5.

[16] ECF No. 384 at 3-4.

[17] *Id*. at 5.

sentenced Defendant to 151 months with no fine, followed by a 3-year supervised release term.[18]

Count 1 was dismissed per the plea agreement.[19]

### B.    Phillips' § 2255 Motion

Defendant filed *pro se* this motion to vacate under 28 U.S.C. § 2255 on June 30, 2022.[20]

His motion seeks relief on the following grounds:

Ground One:  District Court lacked jurisdiction to impose an enhanced sentence;
  (1) The government failed to comply with statutory requirements of prior notice to defendant and counsel.
  (2) The government failed to file pre-plea information with respect to prior convictions.

Ground Two:   Appointed Counsel Stephen Shapiro provided constitutionally ineffective assistance of counsel:
  (1) counsel failed to adequately meet and consult with [petitioner] during pretrial negotiations, failed to conduct any pretrial investigation, failed to hire an investigator to conduct such investigation, and advised [petitioner] to unreasonably to plea[d] guilty to uninvestigated offenses while relying on the government's version of facts;
  (2) counsel failed to review the government's evidence to find exculpatory materials to file pretrial motions and/or prepare for trial;
  (3) counsel failed to investigate [petitioner's] criminal history before getting him to plead guilty, leaving him to believe he would be subject to sentencing of 30 to 37 months;
  (4) counsel failed to advise [petitioner] of constructive possession and dominion and control elements of possession with intent since no drugs were found on his person and was located in a vehicle in which he was a passenger;
  (5) counsel failed to investigate the facts of the case in which he would have learned that [petitioner] was a passenger in a vehicle with an associate whom text messages show had purchased the cocaine that was found in that associate's vehicle after a traffic stop;
  (6) counsel failed to file a Motion to Withdraw Guilty Plea immediately after the Pre-sentence Report's career criminal recommendation;
  (7) counsel gave misadvice and misinformation about [petitioner's] criminal history and being a career offender, and failed to advise him of an affirmative defense to possession with intent and induced a guilty plea without investigating the facts of the case having been properly and/or

---

[18] ECF No. 384 at 6, 8; ECF No. 223.

[19] ECF No. 384 at 13; ECF No. 223 at 1.

[20] ECF No. 368.

correctly informed of the elements of the crime and being a career offender, [petitioner] would not have pleaded guilty and insisted on going to trial.

Ground Three:  Guilty Plea NOT voluntary and intelligent.
(1) Counsel induced the plea on erroneous advice [that petitioner] was not a career offender and subject to a guideline sentence of 30 to 37 months;
(2) Guilty plea inadequate because [petitioner] did not receive true notice of the essential elements of possession with intent where possession would have to be constructive since no drugs were found on his person;
(3) Guilty plea hearing was defective because [petitioner] did not understand the nature of the charges and guilty plea accepted without basis in violation of FRCP 11(f) , as [petitioner] did not possess drugs on his person, was a passenger in a vehicle where drugs were found in the vehicle belonging to the driver, and text messages show the driver to have purchased the drugs;
(4) with correct information and proper instruction, [petitioner] would NOT have pleaded guilty and would have insisted on going to trial, to make the government to prove constructive possession of the drugs, where text messages show the driver to be the purchaser, and the government offered neither fingerprint nor DNA analysis to show [petitioner] had handled the drugs found in the driver's vehicle.  Without [petitioner's] acceptance of responsibility allocution, there is reasonable doubt, and the inducement of the guilty plea with misadvice and misinformation alleviated the government of its burden and was NOT voluntary and intelligent.

Ground [Four]:   [Petitioner] was denied Due Process in violation of the 5th Amendment.
(1) counsel's inducement of guilty plea with misadvice and misinformation, that [petitioner] was not a career offender and subject to a guideline sentence of 30 to 37 months, caused him to plea[d] guilty;
(2) By sentencing [petitioner] to the prison term of 12 years, 7 months, the Court violated [petitioner's] Due Process rights to enforce the provisions of his plea agreement because bargained-for sentence to which he was constitutionally entitled to was a maximum of 10 years;
(3) The government breached the plea agreement by expressing agreement with pre-sentence report's recommended sentence which was higher than bargained for sentence.
(4) [Petitioner] was convicted and sentenced on basis of materially untrue assumptions and/or misinformation, as [petitioner] neither possessed drugs on his person nor had dominion and control over the drugs and/or the vehicle or area of the vehicle the drugs were found in, and was incorrectly advised he was not a career offender.
(5) counsel failed to file a Notice of Appeal.
(6) counsel failed to ask [petitioner] whether he wanted an appeal and failed to discuss the merits of an appeal when he was sentenced as a career offender under terms of a plea agreement where counsel would have to raise an

5

> ineffective claim against himself.  [Petitioner] would have timely appealed the sentence and/or conviction on Direct Appeal.[21]

In its initial opposition memorandum, the Government argued that an evidentiary hearing should be held on Defendant's claims that his counsel failed to discuss or lodge an appeal after Defendant was sentenced as in the career offender range.[22]  Considering the request, the District Court referred the motion to me for an evidentiary hearing to be held on Defendant's claim that his appointed trial counsel failed to file a notice of appeal, to ask Defendant whether he wanted to appeal, and to discuss the merits of an appeal when Defendant was sentenced as a career offender.[23] On November 7, 2023, I issued a Findings and Recommendations pursuant to FED. R. CRIM. P. 59(a), which included my findings of fact and conclusions of law on these issues recommending that relief on this portion of Defendant's claims be denied.[24]  Defendant filed objections and the matter remains under review before the District Judge.[25]

Following the evidentiary hearing, I ordered additional briefing from the Government on the remaining claims.[26]  I also have provided Defendant, proceeding *pro se* on the remaining claims, an opportunity to file a traverse, and nothing has been filed.[27]  In its supplemental response, the Government argues that Defendant waived his right to contest his sentence as part of his plea agreement.[28]  The Government argues that Defendant has not shown that his plea or the waiver were not knowing or voluntary made or that he was unaware of the waiver, especially considering the plea colloquy.[29]

---

[21] ECF No. 368 at 14-18.

[22] ECF No. 372.

[23] *Id*. at 17-18 (Claim 4, ¶5&6); ECF No. 377, at 1.

[24] ECF No. 417.

[25] ECF No. 419.

[26] ECF No. 418.

[27] *Id*.

[28] ECF No. 422, at 5.

[29] *Id*. at 7-8.

The Government further argues that all but Defendant's ineffective assistance of counsel claims are now procedurally barred from collateral review, because he failed to raise them on appeal.[30]  The Government argues that, because Defendant failed to establish ineffective assistance in connection with the filing of an appeal (as addressed in the prior Findings and Recommendations), he cannot show cause for his failure to present his claims challenging the career offender enhancement on appeal.

The Government also argues that Defendant's ineffective assistance of counsel claims are meritless under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) as applied to § 2255 motions.[31]  The Government urges that Defendant's counsel was diligent in obtaining a favorable outcome for Defendant through the plea agreement.[32]  The Government also argues that counsel was not deficient in failing to move to withdraw the plea after career offender status was invoked in the PSI.[33]  The Government contends that such a motion likely would not have been granted and had it been, he likely would have been convicted on all counts had he gone to trial. This would have resulted in a far greater sentencing range of 360 months to life.  In addition, Defendant cannot show that he was prejudiced by counsel's performance or that he would have received a lower sentence but for counsel's alleged deficient performance.[34]

Finally, the Government argues that Defendant's claims are conclusory and not supported by fact or law.[35]  As an example, the Government refers to Defendant's claim that the trial court lacked jurisdiction to sentence him to an enhanced sentenced when the Government failed to

---

[30] *Id*. 8-9.

[31] *Id*. at 10-12.

[32] *Id*. at 13-14.

[33] *Id*. at 15.

[34] *Id*. at 18.

[35] *Id*. at 16.

comply with statutory notice requirements and failed to file a pre-plea bill of information on the prior offenses.[36]  Although Defendant did not explain his claim, the Government contends that Defendant has confused enhancement with career offender status.  The Government submits that the sentence was not enhanced to require compliance under 21 U.S.C. § 851.  The Government agreed not to seek enhancement in the plea agreement.[37]  Instead, Defendant was designated a career offender in the PSI, something not in the Government's control, and his sentence range changed pursuant to the United States Sentencing Guidelines at §4B1.1.[38]

The Government further contends that all of Defendant's claims are conclusory in a similar way and can be dismissed without an evidentiary hearing.[39]

## II.    __STANDARD OF REVIEW__

A defendant may move to vacate, set aside, or correct his sentence pursuant to § 2255 on several grounds:

(1)    the imposition of a sentence in violation of the Constitution or the laws of the United States;
(2)    a lack of jurisdiction of the district court that imposed the sentence;
(3)    the imposition of a sentence in excess of the maximum authorized by law; and
(4)    the sentence is otherwise subject to collateral attack.[40]

Section 2255 is an extraordinary measure, and it cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal.[41]  If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have

---

[36] *Id.*

[37] *Id.* at 17.

[38] *Id.* at 16.

[39] *Id.* at 17.

[40] 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citing *United States v. Cates*, 952 F.2d 149, 151 (5th Cir.), *cert. denied*, 504 U.S. 962, (1992)).

[41] *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990).

been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice."[42] A defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both "cause" for his procedural default (i.e., failure to raise it on appeal), and "actual prejudice" resulting from the error.[43]

## III.    DISCUSSION

### A.    Phillips Waived the Right to Seek Collateral Review of His Guilty Plea and Sentence (Claim Nos. 1, 3 at ¶¶ 2 & 3, and 4 at ¶¶ 2, 3, & 4)

On collateral review of a conviction or sentence following a guilty plea pursuant to a plea agreement, the Court must enforce the waiver of rights as written in the agreement when the defendant knowingly and voluntarily waived collateral review of his guilty plea and sentence, the Government timely seeks enforcement of the collateral review waiver, and the plain language of the collateral review waiver applies to the defendant's challenge.[44]  "[I]t makes considerable sense to address the enforceability of a clearly worded collateral-challenge waiver before turning to the merits" of a motion to vacate.[45]

The court should consider whether a defendant knowingly and voluntarily waived his right to seek post-conviction relief.[46]  To do so, the court considers "(1) whether the waiver was knowing and voluntary and (2) whether the waiver applies to the circumstances at hand, based on the plain

---

[42] *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994) (citation omitted).

[43] *Placente*, 81 F.3d at 558 (citing *United States v. Frady*, 456 U.S. 152, 168 (1982)).

[44] *See United States v. Barnes*, 953 F.3d 383, 386-89 (5th Cir. 2020) (rejecting as foreclosed by precedent Defendant's argument that he could not waive his right to challenge an illegal or unconstitutional sentence and reciting the only two exceptions to the general rule that knowing and voluntary collateral review waivers are enforceable: ineffective assistance of counsel and sentences exceeding the statutory maximum), *cert. denied*, 141 S. Ct. 438 (2020); *see also United States v. Potter*, No. 13-141, 2015 WL 3486446, at *1 (E.D. La. Jun. 1, 2015) (summarizing authorities holding that a Defendant is held to the terms of the plea bargain unless the record contains proof that the waiver was not voluntary or knowing).

[45] *Portis v. United States*, 33 F. 4th 331, 338 (6th Cir. 2022) ("What is the point of having such provisions in a plea agreement if they are not enforced at the outset?").

[46] *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

language of the agreement."[47] "A waiver is knowing and voluntary if the defendant knows that he has the right to collateral review and that he is waiving it in the plea agreement."[48] "[A]n informed and voluntary waiver of post-conviction relief is effective to bar such relief" except in two circumstances: (1) an ineffective assistance of counsel claim that "directly affected the validity of that waiver or the plea itself"; or (2) when a sentence "exceeds the statutory maximum."[49] Formal declarations in open court carry with them a "a strong presumption of verity."[50] Similarly, "official documents—such as a written plea agreement—are 'entitled to a presumption of regularity and are accorded great evidentiary weight.'"[51]

Considering these factors, the plea agreement and the plea colloquy demonstrate that Defendant knowingly and voluntarily waived his right to collateral review. As part of this favorable plea agreement, Defendant waived his rights to appeal and to contest in post-conviction proceedings his guilty plea, conviction, supervised release, any ordered fine or restitution, and the sentence itself as well as "the manner in which his sentence was determined."[52] As exceptions to the waiver, Defendant retained the right to appeal "any sentence imposed in excess of the statutory maximum," which does not apply here, and the "right to raise a claim of ineffective assistance of counsel in an appropriate proceeding."[53] Defendant confirmed his understanding of these waivers and exceptions during the plea colloquy with the court.[54]

---

[47] *Barnes*, 953 F.3d at 386 (quoting *United States v. Kelly*, 915 F.3d 344, 348 (5th Cir. 2019)).

[48] *Id.* (citation omitted).

[49] *United States v. Hollins*, 97 F. App'x 477, 479 (5th Cir. 2004) (citations omitted).

[50] *United States v. Abreo*, 30 F.3d 29, 31 (5th Cir. 1994) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see also United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) (declaring this rule as "well established").

[51] *United States v. McDaniels*, 907 F.3d 366, 371 (5th Cir. 2018) (quoting *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)).

[52] ECF No. 115, ¶a-c, at 2-3 (Plea Agreement); ECF No. 411, at 11 (Sealed Transcript); *see also*, ECF No. 422, at 3.

[53] ECF No. 115, ¶d, at 3 (Plea Agreement); ECF No. 411, at 11 (Sealed Transcript).

[54] *Id.* at 7-8.

In this case, the Government has timely invoked the waiver of collateral review contained in Defendant's plea agreement. The record is clear that, as part of the plea agreement, Defendant agreed to waive his right to collaterally challenge his conviction and sentence, aside from the limited exceptions. Defendant has not challenged the validity of this waiver. For the reasons later provided in this Report, Defendant has not demonstrated ineffective assistance of counsel in connection with the voluntariness of his plea or the waiver included in the agreement. Therefore, the collateral-review waiver must be enforced as written, and review of Defendant's claims is procedurally barred. The Court need not reach the merits of Defendant's *pro se* collateral challenge to his guilty plea and sentence as asserted in Claim No. 1, Claim No. 3, ¶2 & ¶3, and Claim No. 4, ¶ 2, ¶3, & ¶4, as delineated previously in this Report.[55]

## B.    Phillips' Remaining Ineffective Assistance of Counsel Claims are Meritless (Claim Nos. 2, 3 at ¶1 & ¶4, and 4 at ¶1[56]

"[A] claim for ineffective assistance of counsel is properly made in a § 2255 motion because it raises an issue of constitutional magnitude and, as a general rule, cannot be raised on direct appeal."[57] To prevail on an ineffective assistance of counsel claim, a convicted defendant must show both deficient performance in and prejudice as a result of counsel's assistance.[58]

Counsel's performance is deficient when it falls below an objective standard of reasonableness.[59] "When ineffectiveness claims relate to counsel's performance at sentencing, *Strickland*'s deficiency prong is met when counsel fails to research facts and law and raise

---

[55] Because the court finds that Phillips waived his right to file collateral review and direct appeal (*see* prior Findings and Recommendation), the court need not consider the Government's alternative argument that the claims are procedurally barred for his failure to assert them on appeal, which he was prohibited from filing.

[56] The ineffective assistance arguments related to appeal in Claim No. 4 at ¶5 and ¶6 were resolved after the evidentiary hearing in my Findings and Recommendations (ECF No. 417) issued November 7, 2023.

[57] *United States v. Conley*, 349 F.3d 837, 839 n.1 (5th Cir. 2003) (citation and internal quotation marks omitted).

[58] *Strickland*, 466 U.S. at 687.

[59] *Id*. at 688.

meritorious arguments based on controlling precedent."[60]  However, "[c]ounsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."[61]

Counsel's performance is prejudicial if the defendant can show that but for counsel's performance, the outcome of the proceeding would have been different.[62]  In the context of a guilty plea, a defendant is prejudiced if he proves that but for counsel's deficient performance he would not have pleaded guilty and would have insisted on going to trial.[63]  Furthermore, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."[64]

In applying this standard, a "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."[65]  In other words, "judicial scrutiny of counsel's performance must be highly deferential."[66]  The court need not address both prongs of the *Strickland* standard if the defendant fails to make a showing on either one.[67]

In his overarching arguments to the court, Defendant contends that his plea of guilty was involuntary and unknowing because he was induced to plea based on misadvice and other failures

---

[60] *United States v. Djuga*, No. 14-140, 2020 WL 1663126, at *3 (E.D. La. Apr. 3, 2020) (quoting *United States v. Cunningham*, No. 12-3147, 2013 WL 3899335, at *7 (S.D. Tex. July 27, 2013) (citing *United States v. Fields*, 565 F.3d 290, 296 (5th Cir. 2009)).

[61] *Wilkes*, 20 F.3d at 651 (quotation omitted).

[62] *Id*. at 693.

[63] *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985); *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (requiring defendant to show a reasonable probability that, but for counsel's allegedly erroneous failure, he would have insisted on a trial).

[64] *Hill*, 474 U.S. at 59.

[65] *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689).

[66] *Strickland*, 466 U.S. at 689.

[67] *Id*. at 697.

by counsel during pretrial proceedings leading to the guilty plea and through the sentencing process. Defendant's allegations are the sum and substance of his claims themselves. In other words, Defendant does not further explain or provide more specific information that that provided in the few sentences forming the statements of the claims outlined above.

As asserted by the Government, conclusory and unsupported allegations are insufficient to support relief under § 2255.[68] Specific to Defendant's motion, "'conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.'"[69] Thus, although Defendant's *pro se* pleadings are "held to less stringent standards than formal pleadings drafted by lawyers,"[70] he is still required to provide sufficient facts to support his claims.[71] In this case, Defendant has failed to do so. His conclusory claims are not supported, and instead are contradicted, by the overwhelming record evidence that demonstrates his trial counsel provided effective assistance throughout the pretrial, plea, and sentencing proceedings.

### 1. Background

Although much of this is outlined above, I provide detailed, relevant background here for ease of reference. Appointed trial counsel, Steven Shapiro, began representing Phillips in May of 2019, shortly after the indictment was handed down, and did so beyond the sentencing phase.[72]

---

[68] 28 U.S.C. § 2255(b); *Blackledge*, 432 U.S. at 74 ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *see also United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) ("[M]ere conclusory allegations on a critical issue" are insufficient to support § 2255 relief).

[69] *Harper v. Lumpkin*, 64 F.4th 684, 691 (5th Cir. 2023) (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)); *see United States v. Daniels*, 12 F. Supp. 2d 568, 575 (N.D. Tex. 1998) ("conclusory allegations cannot serve as the basis for a claim of ineffective assistance of counsel" in a § 2255 proceeding); *Miller*, 200 F.3d at 282 ("[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

[70] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

[71] *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).

[72] ECF No. 24 (reflecting Mr. Shapiro as counsel at the arraignment); ECF No. 36 (appointment order). Shapiro testified at the evidentiary hearing that he continued to represent Phillips during his cooperation period.

By June 26, 2019, the Government advised the court in a motion for continuance that discovery

with the defendants, including Phillips, was underway and plea discussions had already begun:

> The Government recently produced an initial round of discovery, and additional discovery is forthcoming. The additional discovery will include multiple sets of Title III intercepted phone calls on phones belonging to the defendants. Attorneys for all parties need time to review the evidence and to discuss potential plea resolutions with the Government. The parties are requesting additional time to attempt to resolve this matter through plea agreements and thus avoid the unnecessary expense of a trial.[73]

The Government repeated this same urging in subsequent motions filed September 27,

2019 and January 3, 2020.[74] By April 9, 2020, Defendant's trial counsel filed a motion seeking

his immediate release from the Nelson Coleman Correctional Center citing general issues with

COVID-19 in the jails and referencing detailed personal medical information provided to counsel

about Phillips and his family members.[75]

After delays resulting from the COVID-19 pandemic, on July 22, 2020, the court held a

status conference with the Government and Phillips's counsel to schedule a re-arrangement date.[76]

At the plea hearing held August 12, 2020,[77] Defendant acknowledged that he discussed the facts

of the case and possible defenses with his attorney before entering the plea.[78] He further stated

that he was satisfied with the advice and services of his attorney.[79] He also signed, and

acknowledged the summary of, the factual basis for his plea which clearly indicated that over some

time, Defendant engaged in phone calls and activities to produce and further the distribution of

cocaine and/or crack cocaine with his co-defendant and that Defendant was present in the car when

---

[73] ECF No. 61, ¶II, at 2.

[74] ECF No. 78, ¶II, at 2; ECF No. 81, ¶II, at 2.

[75] ECF No. 92, ¶D, at 7-8, 11.

[76] ECF No. 111.

[77] ECF No. 113.

[78] ECF No. 411, at 10.

[79] *Id.*

cocaine was purchased from another co-defendant, and when the car soon after was stopped by DEA agents, who seized powder cocaine, crack cocaine, and burned cigar containing marijuana from the car.[80]  The factual basis included a number of references to calls and text messages related to the drug activity.[81]

In light of his plea and cooperation, the Government moved for a three-level decrease in his Sentencing Guideline range for acceptance of responsibility.[82]  However, in the draft PSR, it was determined that Defendant qualified for career offender status thereby increasing his sentencing exposure under the Sentencing Guidelines.[83]  On December 3, 2020, Defendant on his own behalf filed objections to the PSR challenging the finding that he was a career offender based on a conviction for attempted distribution as a predicate offense.[84]  Defendant also complained in his cover letter to the court, dated October 1, 2020, that he was having difficulty contacting his attorney and obtaining a copy of the draft PSR.[85]  Phillips's counsel also filed objections to the PSR.[86]  Based on the testimony at the evidentiary hearing and the sentencing transcript, counsel's objections also addressed the career offender designation based on the attempted distribution conviction and Defendant's role as a minor participant.[87]  Counsel also filed a sentencing memorandum addressing the alleged impropriety of the career offender designation, noting Defendant's minor participation, and requesting a downward departure.[88]

---

[80] *Id.* at 16-17, 18.

[81] *Id.*

[82] ECF No. 119.

[83] ECF No. 120.

[84] ECF No. 134, ¶I, at 2.

[85] *Id.* at 1.

[86] ECF No. 137 (restricted access).

[87] ECF No. 384 at 3, 4-5.

[88] ECF No. 210.

At the sentencing hearing held June 30, 2021,[89] the court overruled the objections noting Fifth Circuit precedent contrary to Defendant's arguments on career offender status[90] and the significant activities in which Defendant engaged during the drug processing and transactions.[91] The court concluded that the sentencing guideline range would be 151 to 188 months imprisonment, $30,000 to $1 million fine, cost of imprisonment and supervision, and $100 special assessment.[92] The court sentenced Phillips to serve 151 months in prison without a fine.[93]

During the course of the sentencing, Phillips was not silent. When asked by the court for additional argument on the objections, Phillips, separate from his counsel, told the court "I've researched this exhaustively as we've noted in a comprehensive manner and I have nothing to add."[94] In mitigation, he asked the court for leniency and an opportunity to prove himself.[95] At no time did Phillips voice concerns with his plea, his counsel's advice, or his understanding of the sentence he faced as a career offender (although he clearly challenged that status).

### 2. Failure to Meet and Consult During Pretrial Negotiations (Claim No. 2 at ¶1)

Defendant's first contention is that his counsel failed to meet and consult with him. Defendant has provided no more information with his motion than can be seen in the court's record. Of course, a court's record is not a definitive source of information for determining how often counsel met with a client or the nature of what was discussed between them. Nevertheless, Defendant's conclusory assertions are in direct conflict with his own testimony and evidence presented at the evidentiary hearing. During the hearing, it was made clear that Defendant and his

---

[89] ECF No. 222.

[90] ECF No. 384, at 3.

[91] *Id*. at 5.

[92] *Id*. at 6.

[93] *Id*. at 8.

[94] *Id*. at 3.

[95] *Id*. at 6.

counsel had extensive discussions about the proposed plea agreement, his cooperation with the Government, and the potential sentencing exposure he faced under differing scenarios.[96]

For example, Shapiro testified that, from the outset, Defendant had evidentiary concerns about his arrest outside of Walmart when the drugs were seized from the car in which he was riding. He recalled that Defendant disagreed with the drug quantities from arrest, especially after the Government added drugs to the conspiracy count. He recalled meeting with Defendant in person several times before the plea, with limited physical access after COVID-19 restrictions were in place. Counsel recalled that they communicated regularly through emails and phone calls, with Defendant often calling him multiple times a day. Soon after his arraignment, they discussed the sentencing possibilities he faced in deciding whether to approach the Government to discuss plea options. Shapiro also testified that prior to signing the plea agreement, he and Defendant discussed potential sentencing ranges depending on how the plea was negotiated. He also testified that they discussed potential for career offender status and that Defendant understood and was warned about range possibilities with and without the status.[97] They continued these discussions even after the plea to prepare and discuss legal research they were both doing to challenge the career offender status.

The limited range of phone logs presented by Defendant's post-conviction counsel demonstrated that there were a great number of telephone calls and communication between Phillips and his counsel. Defendant also eventually confirmed by his testimony that he had discussions with his attorney about the plea and sentencing ranges.

---

[96] The hearing was electronically recorded on the court's internal recording system.

[97] *See, e.g.*, ECF No. 416-1, Exh. D1 (email exchanges April 2020); ECF No. 416-2, Exh. D2 (email exchange May 7, 2020).

Considering the foregoing, there is no support for Defendant's conclusory claim that his trial counsel failed to meet and communicate with him during pretrial negotiations. He has not demonstrated that his counsel's performance was deficient as defined by *Strickland* and its progeny. These claims, therefore, are without merit.

### 3. Failure to Investigate, Hire an Investigator, and Review Evidence to Find Exculpatory Material to support Pretrial Motions and Prepare for Trial (Claim No. 2 at ¶1, ¶2, ¶5, and ¶7)

While there is no indication that a defense investigator was hired prior to Defendant's plea, the remainder of his claim is unsupported by the record. Shapiro indicated at the hearing that he reviewed and discussed with Defendant the facts underlying the arrest and supporting the plea. Counsel recalled that Defendant always had concerns with the seizure of evidence at the time of his arrest and disagreed with the quantities the Government included in the indictment against him. The telephone recordings reflected that counsel reviewed the discovery turned over by the Government, which included the text messages and calls between Defendant and co-defendants. He also explained to Defendant that he could be charged in the conspiracy count even if he conspired with only one person and even if he disagreed with the drug amount designated by the Government to support the charge.

From the discussions with his counsel, Defendant almost immediately began to position himself to plead guilty and cooperate with the Government. He has offered no basis for his counsel to have filed other pretrial motions or further prepare for trial after the favorable plea was negotiated. Defendant, therefore, has failed to present factual support or more than conclusory assertions regarding his counsel's pretrial preparations. He has not demonstrated that his counsel's performance was deficient. These claims are without merit.

### 4. Failure to Investigate and Properly Advise Regarding Criminal History and Likelihood of Career Offender Status (Claim No. 2 at ¶3 and ¶7; Claim No. 3 at ¶1; Claim No. 4. at ¶1 and ¶4) and Failure to File Motion to

**Withdraw Guilty Plea After the Pre-Sentence Report Included Career Offender Recommendation (Claim No. 2 at ¶6)**

A review of the pleadings of record reflects that both Defendant and his counsel were well aware of the potential for career offender status and how to challenge it prior to sentencing. Considering the information provided at the evidentiary hearing, it is quite clear that Defendant and his counsel had multiple conversations about the potential for a career offender status to be used in the PSR and how they should best challenge it. In fact, Defendant discussed with counsel his own legal research on career offenders and filed his own brief (as did his counsel) on the topic.

Without doubt, Defendant had repeated discussions about sentencing ranges with and without career offender status with his counsel in multiple phone calls between April of 2020 and the plea hearing, and thereafter while preparing for the sentencing. In at least one of those recorded conversations, Defendant acknowledged his understanding that the sentencing judge had the option to adopt the career offender recommendation in the PSR or agree with their argument that it should not apply to Defendant. They had similar conversations about various sentencing range exposures and potential for career offender status between May 17, 2020, and the sentencing hearing several months later. Counsel was not deficient in his efforts to educate and advise Phillips on his sentencing exposure, including the potential for a career offender designation in the PSR.

As further demonstrated at the evidentiary hearing, and support by the record documents, the plea negotiated by counsel with the Government greatly reduced Defendant's exposure from what was a range of 10 years to life in prison with the conspiracy count. The plea agreement to only count four (possession with intent) guaranteed that his sentence would be no more than 20 years. As discussed repeatedly between Defendant and his counsel, his best case sentencing range was 30 to 37 months with the mandatory minimum and a worst case as a career offender of 151 to 188 months. Although Defendant thought he should get between 30 and 37 months, he confirmed

at the hearing that he was not told what sentence he would get and knew that he was facing higher sentencing exposure as a career offender.

Considering the foregoing, Defendant has failed to demonstrate that his counsel was deficient in advising him on the various scenarios of sentencing exposure and the ramifications of a career offender status.  There is no doubt that Defendant wanted to challenge the application of the career offender status (both before and after the PSRs were issued) and convince the court to opt for a lower sentencing range.  Defendant spoke to his counsel on September 23, 2020, the day after the draft PSR was issued, and they discussed the report and the career offender recommendation.  They also discussed the prior convictions relied on in the PSR, the legal landscape on the issue of attempt convictions as predicate offenses, and over the course of several conversations, reviewed the calculations in detail.  However, Defendant at no time indicated to the court, in his pleadings, or in his recorded conversations with counsel that he desired to withdraw his plea (or that he would not have pled) due to the higher sentencing exposure as a career offender.

Rather, while Defendant expressed his disappointment to counsel by phone after sentencing, he also voiced his determination to continue cooperating with the Government in hopes that he might receive a sentence reduction from those efforts.  With this, the court is not convinced that any advice from counsel induced Defendant to plead, or that he would not have otherwise entered the plea, which significantly dropped his sentencing exposure because of the dismissed conspiracy count.  These claims are without merit.

### 5. Failure to Advise or Improper Advice Regarding Constructive Possession and the Dominion and Control Element of Possession with Intent (Claim No. 2 at ¶4, ¶5, and ¶7; Claim No. 3 at ¶4)

At his guilty plea hearing, the court advised Defendant of his rights, including his right to have the Government prove at trial the elements of possession with intent to distribute cocaine and

crack cocaine, including proof that he "knowingly possessed a controlled substance."[98]  Defendant also confirmed at the hearing that he agreed with his counsel's affirmations that he explained the charges to Defendant "in great detail," and investigated the facts, law, and any possible defenses.[99] Defendant also confirmed the truthfulness of the statements in the factual basis as summarized by the Government and which included statements regarding Defendant's activities in connection with the charged conspiracy and his presence during the drug transaction in his co-defendant's truck which led to their arrests.[100]  He had no questions about the facts as presented.[101]

Defendant has presented no argument or other support for his conclusory claim that his counsel did not advise him on the meaning or importance of constructive possession.  Defendant clearly knew from the outset that he was a passenger in someone else's truck when they were stopped and eventually arrested.  He clearly knew that the drugs seized in connection with his arrest were taken from the truck in which he was a passenger.  Despite this, he did not question any of this on the record nor was this aspect of the case the subject of the phone calls with counsel played during the evidentiary hearing.  Even if his counsel did not clarify the meaning of the terms, Defendant's bald assertions do not point to a defense to the charges as he would suggest.  To the contrary, the fact that he did not own the car from which he and the drugs were taken does not alter the facts (to which he agreed) that demonstrate his role in the production and possession, as well as his voluntary presence in the car and participation in the drug sale at the Walmart.  The phone calls and text messages to which he refers establish his role and presence and were the very support relied on by the Government in the factual basis to support the plea.

---

[98] ECF No. 411, at 8 (Sealed Transcript)
[99] *Id*. at 13-15.
[100] *Id*. at 18.
[101] *Id*. at 19.

It is difficult for the court to find that Defendant was not aware of the facts surrounding his arrest or that he believed his constructive possession would have been a defense to (rather than a basis for) the charges against him. The court finds support in Shapiro's general references to the extensive discussions had from the outset of representation which led counsel and Defendant to an early decision to pursue plea negotiations. Considering the record, and having presented mere conclusory allegations, Defendant has failed to demonstrate that his counsel was deficient or prejudicial in his preparation of the case or advice to plead guilty. These claims are without merit.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the remaining claims in Defendant Dale Phillips, Jr.'s Motion to Vacate, Set Aside, or Correct a Sentence (ECF No. 368) filed pursuant to 28 U.S.C. § 2255 be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[102]

New Orleans, Louisiana, this __5th__ day of March, 2024.

_Donna Phillips Currault_
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[102] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1 ).